May it please the Court, my name is Jonathan Montag and I represent Mr. SOTO. Mr. SOTO got convicted in 1997 of what amounts to having sex with a person underage. At the time, he pled guilty, got sentenced to 240 days in jail in California. There were several issues in the case, some of them superseded by recent decisions by this Court. It's my responsibility and fair to the Court to let you know about some of them. But first, an issue that came up in the briefing was whether his crime was a misdemeanor or not. Because an important issue has been whether a misdemeanor, sexual abuse of a minor crime, is an aggravated felony. And this Court in Garcia-Lopez v. Ashcroft has indicated that a wobbler crime, one that under California law is either a misdemeanor or a felony, is defined as a misdemeanor at the time of the sentencing under the California Framework, Section 17 of the Penal Code. So that under the way the Ninth Circuit reads California law, in the immigration context at least, when he got sentenced to less than a year, then he came under the misdemeanor definition. And also in the same case, Garcia-Lopez, they said when the crime was ultimately declared reduced to a misdemeanor, then again, it was a misdemeanor. So for those two reasons based on how the Ninth Circuit reads California law, I think we can all be confident that his crime was a misdemeanor, sexual abuse of a minor. And the next issue then of course is whether his crime of sexual abuse of a minor as a misdemeanor is an aggravated felony. And this court very recently in January in the United States versus Alvarez Gutierrez, and that's at 394 F3rd 1241, said that sexual abuse of a minor as a misdemeanor is an aggravated felony in the sentencing context. So the question then is, is this case distinguishable because it's an immigration case and not a sentencing case? And that's something for the court to decide whether it wants to make a distinction. And the second issue is the fact, as a factual issue, the alien in Alvarez Gutierrez was sentenced to a year. He got sentenced to 12 months according to the facts of the case. And the question then would be whether the fact that he got sentenced to 12 months was somehow distinguishable from Mr. Soto who got sentenced to clearly in the misdemeanor range of 240 days. However, if this court feels that Alvarez Gutierrez states the proposition that a misdemeanor sexual abuse of a minor in this circuit is an aggravated felony, the next question is whether the fact that the case was expunged has any impact on how this court wants to look at it. And I think that it does. And it does because of how the BIA is making its decisions. And under the concept of Chevron deference, this court will defer to the decisions of the agency on matters that are to the agency's expertise. This case originally was before this board, the case of this court. Mr. Soto brought it here several years ago and he got a remand from this court back to the BIA because this court found that in deference to the board's decision in an earlier decision, matter of Cramond, that this case, he may not be an aggravated felon because in matter of Cramond, the BIA articulated the proposition that a misdemeanor sexual abuse of a minor is not an aggravated felony and sent it back to the board. The board changed its mind. And the board changed its mind in the case matter of small. And based on matter of small, it determined that if he is a misdemeanant and since he has this conviction, he is an aggravated felon. However, in matter of small, the board did not apply the reasoning that's the benchmark or what underpins a Chevron deference determination. Go ahead. Okay, go ahead. The board in matter of small read the case law and said the 7th Circuit, the 6th Circuit, and the 11th Circuit have all decided that this is sexual abuse, that misdemeanor sexual abuse of a minor is an aggravated felon. Therefore, we're going to end it. And then they decided the 9th Circuit case, which didn't state that proposition. But they said we're going to go with the circuits because we'll always win if we go with the majority of the circuits. But that's not Chevron reasoning. Chevron reasoning would be if the EPA, for example, wanted to make a determination whether your water is poisonous or not. Yeah, we understand what Chevron deference is. Okay, so you were off on expungement. You're now backtracking into aggravated felony. How does this relate to expungement? It relates this way because the reason why this court in its Murillo v. INS decision decided that expungements aren't applicable in this circuit is because they were deferring to the they're giving Chevron deference to the BIA in its decision in matter of Roldan. Now, matter of Roldan is a case determining what is a conviction under immigration law. And then in cases like matter of crime, and there's two more that I cite as well, which is matter of Llanos and matter of El Gendy, the BIA again, instead of using its own reasoning to make these determinations, is polling the circuits and deciding what the law should be. Well, we've held in Ramirez-Castro, have we not, that expungement doesn't change the character of the offense for immigration purposes. Well, the reason the court did that is because it was deferring to the Well, maybe so, but it's still our law. So what are you asking this panel to do? Ignore it or ignore it in this case on the ground of Chevron not giving Chevron deference? What I'm asking the court to do is to realize or to accept that there's been a change in the law, a change in the law in how the BIA is conducting its jurisprudence. Well, that may be, but is it a change in our Are you suggesting we ignore or overrule Ramirez-Castro based on your reasoning? Yes. Well, we can't do that. Well, the reason why is because That's not part of our going back on that and do that, but we only change our law if the Supreme Court changes the law, as far as I know. I understand it's a difficult situation, but the point that I want to make, and maybe the court will be able to accept it, is that when we're trying to figure out the definition of different, decide whether a crime is a conviction or not or what the meaning of the conviction is, this court has been deferring to the judgment of the BIA. But when the BIA in three separate cases relevant to the issue of whether a crime is a conviction or whether it's an aggravated felony says, we are no longer going to be exercising our deference. We are going to do what the circuits say. And for the circuits to then say, well, we're going to defer to the BIA. No, you've made your point. I do understand that. Basically, those are the points that I have to make about the case. Now, what's the effect of his army service here? The effect on whether he's an aggravated. No, in terms of whether there's any relief available to him. So long as he stands convicted of, assuming stands convicted of what's construed as an aggravated felony, he gets, there's no relief open to him even though he went off and served, what was he in the Gulf War? First Gulf War. First Gulf War. So he gets, he's just. Nothing. Nothing. Yeah. The statute of section 329 of the act. Moral turpitude forecloses it.  which he lacks if he is convicted of an aggravated felony. Okay. Thank you. You can. May it please the Court. Norah Scully-Schwartz for Respondents. I'm very busy. Alberto Gonzalez. Petitioner has been convicted of an aggravated felony. Let's look at the facts of this case and the definition under the statute. He's almost 19 years old. Now, we know what he did. He was 19. He had sex several times with an almost 14-year-old. She had a child. Initially, he didn't want to acknowledge it, but then he did, and he may or may not be paying child support. Well, he was certainly. And he was at one point said to be married, but he's not married to her. Well, that was a mistake. No, it was a mistake, so we know that. And then he also went off and served at least two years in the Army, correct? We don't know that, Your Honor. Uh-huh. He says that in his reply brief. It's never presented to the Board. I have no documents. I don't know that. I mean, I'm sure he's not making it up, but it's not in the record. We can't consider it. So let's suppose that he served honorably in the Gulf War, first Gulf War. It doesn't affect anything. It doesn't affect anything. It doesn't affect anything because even if it's expunged, they can still consider it. And it has, as far as – I'm sorry. This upsets me. Bring this stuff up in the reply brief. Well, look, counsel, it may upset you, but your job is to be professional. You're right. Okay? Now, just calm down a minute. Just calm down a minute. I do apologize. We have a young man and a young woman who got together in consensual sex, at least as far as the record shows. Okay? So, yes, technically he may wind up with an aggravated sexual felony on his record or an aggravated sexual assault. Okay, so he's got that on his record. Now, does the – you talked – at least your counterpart said that DHS, at least, isn't heartless, and they take a look at the individual circumstances. All I'm trying to probe here is does looking at this case behind the labels that are put on it and looking at the actual facts and assuming that he is a sympathetic character who has acknowledged responsibility for his mistake and that he and the young woman are not hostile to each other and he's providing some – taking some responsibility for the child and that he served in the Gulf War, is there anything in our system that allows the government to take that into account and grant relief even though he stands convicted of a misdemeanor expunged sexual assault, which our law says has to be treated as an aggravated felony and the expungement doesn't make any difference? Okay. Well, there are two issues here. Unfortunately, since I've been doing this a while, I do have the answer to that, and I have briefed that issue. The fact is the expungement, the naturalization provisions, are completely separate and apart from the removal provisions. He can – now, this – the fact that he served in the Gulf War doesn't make a difference. The only waiver for serving during a time of hostility applies to residence. It waives the time of residence only. So the fact that he has this waiver, this hostility waiver, doesn't affect the criminal history at all. The fact that it's expunged can be considered by the person who adjudicates his application. The fact, even if it is expunged, he can still consider in the exercise of discretion the facts of the underlying conviction. He is not barred because, I mean, he – the fact that it's expunged doesn't mean that the crime did not occur. And the person, the adjudicator on the naturalization application, is entitled to consider that, whether there's been an expungement or not. The fact that there has been an expungement, the reason for the expungement is – will be one of the discretionary factors that the adjudicator can consider. That's a separate issue. We haven't even gone there. What we have here is there's no question that this is an aggravated felony. We understand, I think, the legalities of the argument. I'm still trying to, if you don't mind my pursuing. The alternative, no. The alternative is a naturalization proceeding. It can certainly apply. The expungement can properly be raised there. I understand that. Okay. Now, and you said in that category, that the naturalization process does not take into account at all the fact that it is military service? Well – Would that weigh at all in the balance? In the naturalization? Yes. Oh, absolutely. It's one of the factors. Now, is there anything – if we affirm the result here, is he foreclosed from that naturalization avenue because of the ruling that we come down with here? Again, I'm in a difficult position there. That I don't know. And I can't answer, and I'm happy to find out in 20HA early next week, unless counsel knows. I'm prepared to respond to that. Okay. Okay. We'll give him some time on rebuttal, and then you can – Okay. Then we have no problem. You're all agreed that this is an aggravated felony under the Wobbler, under the Tocatli, under Pannulliar. I just want to make sure that – Well, I'm not – we're not giving a ruling from the bench, but we have your arguments on it. Okay, fine. Well, there's the new cases, Tocatli, Pannulliar, all those that say, you know, basically there's – committed all the elements of the offense. And he pleaded to a felony, and he was convicted on a felony just because it's treated as a misdemeanor doesn't make it a misdemeanor because he meets all the elements of the felony offense. So the Wobbler statute doesn't apply. And on the other point that he raises, the Board has not given up adjudicating or reasoning, and all their decisions are entitled to Chevron deference. What counsel misunderstands is that when – just as you do when you're reversed by the Supreme Court, because the Supreme Court – You could have gone all morning without bringing that up. I'm really sorry about that. But just as an appellate court, when reversed, follows the law of the court that supersedes it, the Board has to follow the law of the circuit in which it's deciding a case. It doesn't mean it's giving up reasoning. It's just saying – Absolutely. We haven't agreed with it, but we are bound by the law of the circuit. They're not giving up any of their authority. And, in fact, I would point out that recently the case of Urytsky, the court of appeals at the Sixth Circuit case, 399, Fed 3rd, 728, decided in March. The court of appeals said – again, deferred to the finding of the Board that this constituted the – it was also two underage kids engaging in rape. It was a very hard case. But they found that even though it was sympathetic, he did meet the call of – he didn't – the forgiveness provisions of the statute under which he was convicted didn't mean that he wasn't convicted and didn't take him outside of the aggravated felony definition and, in fact, ordered his removal. So there has been no abrogation of their right to adjudicate in the first instance. I think our position is clear? Yes, it is. May I try and retain my good standing by saying congratulations, Your Honor? That was a huge, huge honor to have the Ninth Circuit Court of Appeals building in San Francisco. I'm sorry this is the first time I've had the opportunity to say congratulations. We were all very, very pleased. And thank you. Thank you. Under 8 U.S. Code 1101F, a person who is convicted of an aggravated felony cannot show good moral character. Under Section 329 of the pact, which covers people who served in the armed forces during wartime who seek naturalization, they don't have to – they can be in deportation proceedings, they can be deportable, but they still have to be able to show good moral character for one year before they apply. And since 1101F precludes the showing of good moral character, Mr. Soto cannot become a United States citizen if this Court believes that he's an aggravated felon. I just wanted to say – What does the one year before you apply provision mean? Let's say he robbed – let's say he shot him two years before he applied. Then he couldn't show good moral – he could show good moral character for one year before, but not two years before, because he has – Okay. And you have to have good moral character for how many years? One year before he applied under – Well, but this – yeah, but this incident occurred several years ago. But under 1101F, a person who has an aggravated felony at any time – Can never show. Can never show any good moral character. And I just wanted to say that in the El-Gendi case of the BIA, they decided that in the Second Circuit, which went both ways on whether a certain crime was or was not an aggravated felony, they decided that they said – Now, again, they noted that the Second Circuit had said a crime is a crime, is an aggravated felony for non-immigration purposes, for sentencing purposes. But for immigration purposes, it's not because of the board. And then they decided at the BIA to see which of the Second Circuit's opinions the Second Circuit would like better and then made that their decision. And it didn't maintain its own independence. That's right. We have your point on that. Okay? Thank you very much. Thank you both. The case that's argued is submitted. The next case on calendar, Lauren Palacios v. Gonzalez, has been submitted on the briefs. And so we will move to our last case on calendar, which is United States v. Williams.
judges: Browning, Fisher, Bybee